I2CANNELLA, Judge.
Plaintiff, Claiborne Breaux, appeals from a judgment granting the peremptory exception of res judicata in favor of defendant, Mine Safety Appliances Company. We reverse.
Plaintiff worked at the Johns-Manville Corporation plant in Marrero, Louisiana from 1947 to 1970. While there, he was exposed to asbestos on a regular basis and wore a dust mask manufactured by defendant. In 1982, plaintiff filed suit against defendant and others in federal court, on the basis that he contracted asbestosis. Near that time, plaintiffs doctor informed him that he did not have asbestosis. Nonetheless, in *1256 1983, he was offered and executed a Release and Settlement with defendant for $500.
Approximately sixteen years later, in September 1996, plaintiff was diagnosed with mesothelioma, a cancer of the lining of the lung. Based on this ^diagnosis, plaintiff filed suit on May 21, 1997 against defendant, claiming this to be a separate and distinct disease from asbestosis, giving rise to a separate cause of action. Defendant filed a peremptory exception of res judicata claiming that plaintiff had settled his rights against it in the 1983 settlement. The trial judge agreed and dismissed plaintiffs suit on August 21,1997.
On appeal, plaintiff argues that the release in 1983 was not intended to compromise his right to sue defendant in the future for asbestos-related cancer. Alternatively, he argues that the settlement and release is ambiguous and must be construed against defendant.
Plaintiff claims that the settlement merely settled his claim for asbestosis, along with any other disease which he may have contracted while working at the plant. In this respect, he argues that “contracted” means “manifested” at the time. Since he did not have asbestosis in 1983 when he executed the agreement and he was not diagnosed with cancer until 1996 (when it manifested), he could not have meant to include this disease. In support thereof, he contends that subsequent to this release, defendant deleted the language related to release of claims contracted while working for defendant, now providing in the release that defendant settles all claims arising out of the use of its products. A copy of a subsequent release was excluded from evidence and proffered by plaintiff.
Plaintiff argues that under Brown v. Drillers, Inc., 630 So.2d 741, 748 (La.1994), a compromise agreement extends only to those matters that the parties expressly intended to settle and the scope of the transaction cannot be extended by implication. Furthermore, the court in Brown stated that the “release of future actions are narrowly construed to assure that the parties fully understand the frights released and the resulting consequences.” Brown v. Drillers, Inc., 630 So.2d at 753.
Plaintiff also argues that the court must look at the circumstances surrounding the execution of the release to prove that he did not intend to compromise his claims for future diseases. Here, the settlement was a nuisance settlement, as can be seen by the amount received, only $500. Plaintiff claims that, in addition, it was impossible for him to evaluate the future consequences that he would suffer by developing cancer.
Plaintiff alternatively asserts that the agreement is ambiguous because it is limited to diseases contracted while for defendant. Moreover, it is unclear what the term “contracted” means in connection with a latent disease such as mesothelioma, especially since the release does not use the words “cancer” or “mesothelioma.”
Defendant argues that the release and settlement is clear and unambiguous. It contends that the language in the document releases defendant from all future claims of any nature arising out of or in any manner whatsoever connected with or resulting from plaintiffs employment with defendant. It notes that plaintiff was represented by counsel and the agreement was intended to put an end to the litigation, which it did.
La. Civ. C. arts. 3071-3083 govern the contract of transaction or compromise. These special rules do not modify or depart from the general principles concerning the object of contracts. La.C.C. arts. 1915, 1916.
A transaction or compromise is an agreement between two or more persons, who, for the purpose of preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and 1 swhich every one of them prefers to the hope of gaining, balanced by the danger of losing. La.C.C. art. 3071. Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed. Also, they do not extend to differences which the parties never intended to include in them. La.C.C. art. 3073. The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on *1257 which the transaction arises. Id. When the parties have compromised generally on all differences which they might have had with one another, the titles which they then know nothing of and which are afterwards discovered are not a cause of rescinding the transaction, unless they have been kept concealed on purpose by the deed of one of the parties. La.C.C. art. 3083. Transactions have the force of law between the parties. La.C.C. art. 3078.
In Daigle v. Clemco Industries, 613 So.2d 619, 622-623 (La.1993), the court stated that the articles on transaction and compromise indicate that parties to a transaction or compromise may settle any difference they may have in the present or in the future that is the subject of a lawsuit or that could result in litigation. It has the effect of res judicata. La.C.C. art. 3078.
In this ease, the agreement provides that, in consideration for $500, plaintiff releases and discharges defendant:
... from any and all claims, demands, damages, actions or suits including any and all claims for medical, hospital or other expenses or personal injuries or disabilities of any nature whatsoever, including but not restricted to, asbestosis, silicosis and/or pneumonoconiosis, past, present or future, and any and all other claims, past, present or future arising out of or | fiin any manner whatsoever connected with or resulting from, either directly or indirectly, injury sustained or occupational diseases contracted while employed at or by Johns-Manville Corporation ...
The compromise agreement cannot be extended beyond its intended meaning. Although the agreement refers to “disabilities of any nature”, “past, present or future,” “arising out of or in any manner whatsoever connected with or resulting from, either directly or indirectly, injury sustained or occupational diseases contracted while employed at or by Johns-Manville Corporation,” it is not logical to expect that plaintiff intended to release defendant for the future manifestation of this type of cancer for $500. This is a terrible disease. If the agreement intended to include mesothelioma, defendant would surely have included it in the listed diseases. As plaintiff argues, this settlement was a nuisance settlement. Thus, we find that the language of the agreement does not include the contraction of this type of cancer which would not manifest for many years, nor did plaintiff intend to include it in the settlement. Plaintiff signed the agreement expressly because he did not have any of the asbestos related diseases at that time. Thus, we find that the trial judge erred in granting the exception of res judicata.
Accordingly, the judgment of the trial court is hereby reversed Costs of appeal are assessed against defendant.
REVERSED.